```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

Zakee Stuart-Holt

    v.                                          Civil No. 17-cv-748-LM
                                                    Opinion No. 2018 DNH 224

United States of America

## **O R D E R**

On August 16, 2016, Zakee Stuart-Holt pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute controlled substances, heroin and fentanyl, in violation of 21 U.S.C. §§ 846 and 841, and one count of money laundering, in violation of 18 U.S.C. § 1956. On November 29, 2016, this court sentenced him to serve 210 months in prison. Stuart-Holt did not file a direct appeal but now, proceeding pro se, seeks relief pursuant to 28 U.S.C. § 2255 from his conviction and sentence.

Stuart-Holt filed his petition on December 26, 2017. See doc. no. 1. With the court's leave, he filed an amended petition, see doc. no. 4, and an addendum to his amended petition, see doc. no. 9. In those filings, Stuart-Holt raises numerous ineffective assistance of counsel claims.

Stuart-Holt has since filed several motions, four of which remain pending before the court. First, Stuart-Holt moves to

join his co-defendant's, Jeannette Hardy's, § 2255 petition, see Hardy v. United States, 18-cv-182-LM (D.N.H. Dec. 23, 2018).  In support of his motion, Stuart-Holt asserts that he and Hardy are adopting the same arguments and citing the same law.  See doc. no. 10.  Indeed, Stuart-Holt's and Hardy's petitions appear to be identical in many respects.  But, as discussed below, Stuart-Holt's subsequent filings raise certain ineffective assistance of counsel claims that Hardy did not assert in her petition.  In addition, the court has already issued an order denying Hardy's petition.  See Hardy v. United States, No. 18-cv-182-LM, 2018 WL 5784991 (D.N.H. Nov. 2, 2018).  Therefore, the court denies Stuart-Holt's motion to the extent it seeks to join his petition with Hardy's.  In light of Stuart-Holt's pro se status, the court grants the motion to the extent it asks the court to consider the arguments raised and law cited in Hardy's filings in her § 2255 case.[1]

The remaining pending motions are a "motion for the court to take judicial notice" (doc. no. 17), a "motion to amend/supplement motion seeking court to take judicial notice" (doc. no. 18), and a "motion to expedite judge's decision" (doc. no. 19).  In each of these filings, Stuart-Holt cites additional

---

[1] In ruling on Hardy's petition, the court similarly granted Hardy's motion to consider the arguments raised and law cited in Stuart-Holt's filings in this case.

case law and makes further arguments concerning his ineffective assistance of counsel claims.  The court construes document nos. 17, 18, and 19 as addenda to Stuart-Holt's § 2255 petition, and addresses the arguments raised in those filings in this order.

**STANDARD OF REVIEW**

Under § 2255, a federal prisoner may ask the court to vacate, set aside, or correct a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).  The burden of proof is on the petitioner. Wilder v. United States, 806 F.3d 653, 658 (1st Cir. 2015). Once a prisoner requests relief under § 2255, the district court must grant an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  If the district court does not hold an evidentiary hearing, the allegations set forth in the petition are taken as true "unless those allegations are merely conclusory, contradicted by the record, or inherently incredible." Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).[2]

---

[2] Stuart-Holt does not request a hearing, and, as is explained below, Stuart-Holt's and the government's filings, as well as the record from Stuart-Holt's criminal case, conclusively show that Stuart-Holt is not entitled to the relief he seeks. Therefore, a hearing on Stuart-Holt's motion is unnecessary.

3

## BACKGROUND

On June 22, 2015, Jeannette Hardy was assaulted by an unknown man as she attempted to enter her apartment building and then was shot in the hand by him as she escaped and ran outside. At the time she entered her apartment building, she was speaking on the phone with Stuart-Holt, who was incarcerated at the Merrimack County House of Corrections ("MCHC") and with whom she shared a lease on her apartment.

In the aftermath of the shooting, and while she was in the hospital, Hardy made statements to law enforcement officers and signed a consent form, authorizing them to search her apartment for evidence related to the shooting. During the same time, Stuart-Holt attempted to reach Hardy by telephone, but law enforcement officers prevented him from doing so.

While searching Hardy's apartment, officers discovered a large amount of what they believed to be heroin. The officers subsequently obtained a warrant, searched the apartment, recovered a large quantity of fentanyl, and arrested Hardy. Additional investigation led to evidence that (1) Hardy and Stuart-Holt had participated in a drug trafficking business since at least July 2014 and (2) Stuart-Holt maintained a safe deposit box in his name at Bank of America to conceal proceeds of the drug trafficking business.

Both Hardy and Stuart-Holt were indicted on one count of conspiracy to distribute and possess with intent to distribute controlled substances, heroin and fentanyl, in violation of 21 U.S.C. §§ 846 and 841.  Stuart-Holt was also indicted on one count of money laundering in violation of 18 U.S.C. § 1956.  On October 13, 2015, Attorney Charles O'Leary appeared on Stuart-Holt's behalf.

On November 17, 2015, Hardy filed two motions to suppress.  The first sought to suppress certain statements she made following the shooting and the second sought to suppress evidence seized during the searches of the apartment.  On November 18, 2015, Stuart-Holt filed a motion to suppress, seeking to suppress evidence seized during the searches of the apartment as well as evidence seized pursuant to a warrant during the subsequent search of the safe deposit box.

On January 14 and 15, 2016, the court held evidentiary hearings on the motions to suppress.  During the hearings, several Manchester Police Department officers testified, as did two medical professionals.  The court heard oral argument on the motions to suppress on January 22, 2016.  On February 25, 2016, the court denied the motions.  See United States v. Casellas, 149 F. Supp. 3d 222 (D.N.H. 2016).

Stuart-Holt subsequently pleaded guilty to the charged offenses.  The court sentenced him to 210 months' imprisonment.

**DISCUSSION**

Stuart-Holt moves to vacate his conviction and sentence under 28 U.S.C. § 2255.  In support, he asserts eight claims of ineffective assistance of counsel.  He claims that his attorney was ineffective for: (1) failing to argue in the suppression motion that Hardy's consent to search the apartment was involuntary because the police did not permit her to speak to Stuart-Holt before she provided consent; (2) failing to argue in the suppression motion that the police violated the Fourth Amendment by searching and field testing drugs found in the apartment;[3] (3) failing to argue in the suppression motion that the evidence log showed that the seizure of a bag containing

---

[3] As with Hardy's petition, Stuart-Holt's petition also asserts a prosecutorial misconduct claim based on the prosecutor allegedly suborning perjury concerning the results of the field test.  Stuart-Holt's plea agreement contains a waiver of his right to bring a § 2255 petition other than to assert specific claims, which does not include prosecutorial misconduct.  See United States v. Stuart-Holt, 15-cr-178-LM, document no. 60 at 13-14.  Even if the claim were not waived, the claim would be procedurally defaulted because Stuart-Holt did not raise it first in a direct appeal.  See, e.g., Lopez v. United States, 344 F. Supp. 2d 777, 782 (D. Mass. 2003).  As the court did with Hardy's claim, however, in light of Stuart-Holt's pro se status, the court considers Stuart-Holt's prosecutorial misconduct claim in the context of his ineffective assistance of counsel claim concerning the search and field test of the drugs found in the apartment.

6

drugs went beyond the scope of Hardy's consent to search; (4) advising him to plead guilty to conspiracy to distribute and intent to possess heroin when there was no evidence that he possessed heroin;[4] (5) failing to argue in the suppression motion that Hardy's consent to search the apartment was involuntary because law enforcement officers deliberately prevented Stuart-Holt from being present and objecting prior to Hardy signing the consent-to-search form; (6) failing to adequately argue that the seizure of the bag containing drugs did not fall within the plain view exception; (7) failing to recognize that the government's representations in his plea agreement established his innocence of the charged offenses; and (8) failing to object to the court's sentencing calculation. The court addresses each claim in turn.

When a § 2255 petition is based on ineffective assistance of counsel, the petitioner "must demonstrate both: (1) that 'counsel's performance was deficient,' meaning that 'counsel

---

[4] Stuart-Holt asserts that he is entitled to habeas relief because the government did not address his claim concerning the lack of evidence that he possessed heroin. The government's failure to address a claim raised in a § 2255 petition, however, does not entitle a petitioner to relief. See Quinones-Torres v. United States, 240 F. App'x 876, 878 (1st Cir. 2007). Regardless, the government did object to that identical claim in Hardy's § 2255 petition, and the court addressed that claim in its order denying Hardy's petition. See Hardy, 2018 WL 5784991, at *6. For the reasons stated in that order, that claim fails.

made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment'; and (2) 'that the deficient performance prejudiced the defense.'" United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Under the deficiency prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). Under the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Failure to satisfy either the deficiency or prejudice prong defeats an ineffective assistance of counsel claim. Id. at 700.

I. Stuart-Holt's First Four Ineffective Assistance Claims

Stuart-Holt's first four ineffective assistance of counsel claims are identical to claims presented in Hardy's § 2255 petition. On November 2, 2018, the court denied Hardy's

petition, holding that she had not shown that she received ineffective assistance of counsel. See Hardy, 2018 WL 5784991, at *2-6. The court addressed in depth each of those four claims in that order, and considered all arguments raised and law cited in Stuart-Holt's filings.

The court does not repeat its analysis here. For the reasons stated in the court's order denying Hardy's petition, Stuart-Holt's first four ineffective assistance of counsel claims fail.

## II. Stuart-Holt's Objection to Hardy's Consent

Stuart-Holt faults his attorney for failing to argue in his suppression motion that Hardy's consent to search the apartment was involuntary because the officers intentionally prevented Stuart-Holt from objecting to the search. He claims that his attorney's failure to raise this argument constitutes ineffective assistance of counsel because that argument would have resulted in the court granting his motion to suppress.

In its order denying Hardy's and Stuart-Holt's motions to suppress, the court addressed the circumstances surrounding Hardy's consent to the search, as well as Stuart-Holt's phone calls to Hardy while she was in the hospital:

> About 15-20 minutes after he arrived at the hospital, [Detective] Leshney took a telephone call at the nurses' station from someone claiming to be Hardy's

9

> husband.  Leshney asked the caller for his name
> several times before the caller hung up.  Several
> minutes later, MCHC Sergeant Matthew Lamanuzzi called
> the nurses' station.  Lamanuzzi told Leshney that
> inmate Stuart-Holt was concerned for Hardy's welfare
> because Stuart-Holt was on the phone with Hardy when
> she was shot.  Leshney asked Lamanuzzi to have Stuart-
> Holt call him back on his cell phone.  Leshney
> testified that he wanted to speak with Stuart-Holt to
> gather information about the shooting and the
> surveillance system.[5]
>
> After speaking with Lamanuzzi, Leshney and [Sergeant]
> Bergeron asked Hardy for consent to search her
> apartment for evidence of the shooting and to collect
> the DVR.  Leshney presented Hardy with a standard MPD
> consent form that authorized officers to collect "any
> letters, papers, materials or other property which
> they may desire."  Hardy asked Leshney about the
> meaning of that phrase, and he told Hardy that their
> search of the apartment would focus on looking for
> evidence of the shooting and collecting the DVR.
> Leshney also explained that if Hardy did not consent
> to a search of her apartment, he would apply for a
> warrant.  Leshney explained that a judge might not
> approve the application, but if the judge did, the MPD
> would search her apartment pursuant to the warrant.
> Hardy then signed the consent form at approximately
> 10:15 p.m.

Casellas, 149 F. Supp. 3d at 228-29.[6]

---

[5] Hardy had previously informed the officers that she had a surveillance system that should have captured the shooting, and that the footage was stored on a DVR located in her apartment.

[6] Stuart-Holt subsequently called Leshney's cell phone and asked to speak with Hardy.  Leshney refused to allow Stuart-Holt to speak with Hardy because, as Leshney explained at the suppression hearing, "he had a policy of prohibiting witnesses from speaking to one another during an investigation.  Since Hardy was on the telephone with Stuart-Holt during the shooting, he did not want to permit them to speak to each other while the investigation was underway."  Id. at 230.

Stuart-Holt contends that his attorney was ineffective for failing to argue that Leshney intentionally prevented Stuart-Holt from being able to object to Hardy's consent to search. Even if his counsel had made that argument, however, the court would still have denied the motions to suppress.

As the court noted in its order denying the motions to suppress:

> Stuart-Holt asserted at the hearing that he affirmatively objected to the search while on the phone with Leshney. The evidence in the record, including Stuart-Holt's affidavit, does not support that assertion and the court finds that he did not object while on the telephone with Leshney. Even if the court agreed with Stuart-Holt that he interposed an objection while on the telephone with Leshney, such a finding would not negate Hardy's consent. See Fernandez v. California, 134 S. Ct. 1126, 1133-36 (2014) (noting that under [Georgia v.] Randolph, a warrantless search done on the basis of an occupant's consent may be unreasonable if a co-occupant objects to the search, but the "holding [is] limited to situations in which the objecting occupant is [physically] present").

Casellas, 149 F. Supp. 3d at 239 n.18. In other words, in denying the motions to suppress, the court held that even if Stuart-Holt had objected to Hardy's consent, that objection would not have undermined Hardy's consent because Stuart-Holt was not physically present at the hospital. Thus, any argument based on the premise that Leshney intentionally prevented Stuart-Holt from objecting would have been fruitless, as any objection by Stuart-Holt under the circumstances would not have

invalidated Hardy's consent.[7]  Therefore, Stuart-Holt has not shown that his counsel was ineffective for failing to make that argument.

III. <u>Plain View Exception</u>

During the consent search, Detective Andrew Fleming was assigned to collect, bag, and label evidence.  Fleming went into Hardy's bedroom and collected the DVR, which was on top of a TV stand.  The TV stand was covered with an off-white powdery substance.  At the end of the search, while doing a "sweep" of the bedroom, Fleming noticed an open gray plastic shopping bag on the floor a few feet from the TV stand.  Standing above the shopping bag, Fleming could see that it contained Ziploc bags, at least one of which was open and contained an off-white chalk-like object, which was the same color as the powdery substance on the TV stand.  The off-white objects were wrapped in opaque wax paper.  Fleming picked up the bag to get a closer look and realized the bag contained drugs.  Fleming unwrapped the wax paper and field tested the contents of the bag, and the result

---

[7] To the extent Stuart-Holt intended to claim that his counsel was ineffective for failing to argue that Leshney somehow prevented Stuart-Holt from being physically present at the hospital to voice an in-person objection to Hardy's consent, that argument fails.  Stuart-Holt was incarcerated at the MCHC at the time, and that argument would have been unpersuasive.

12

was "presumptive positive" for heroin.[8]  At that point, the officers stopped searching Hardy's apartment and sought a search warrant.

Hardy and Stuart-Holt moved to suppress the drugs, arguing that Fleming seized the bag, which went beyond the scope of Hardy's consent.  The court found that the seizure of the bag was permissible under the plain view exception.  Casellas, 149 F. Supp. 3d at 236-38.

Stuart-Holt faults his attorney for allegedly failing to adequately argue that the seizure of the bag containing drugs did not fall within the plain view exception.  Although he takes issue with the court's conclusion that the plain view exception applied, Stuart-Holt fails to explain adequately how his counsel was ineffective with regard to his arguments concerning the seizure of the bag.  For example, Stuart-Holt contends that his counsel failed to inform the court that Fleming "did not lawfully reach the vantage point" where he would have seen the bag.  But Stuart-Holt's and Hardy's attorneys argued strenuously that the plain view exception did not apply, in part for that very reason.  Therefore, Stuart-Holt has not shown that his

---

[8] As it turned out, the substance was fentanyl, a controlled drug with properties similar to those of heroin.

13

counsel committed any error with regard to his arguments concerning the plain view exception.

IV. Plea Agreement

Stuart-Holt next faults his attorney for failing to recognize that the government's representations in Stuart-Holt's plea agreement established his innocence of the charged offenses.[9] He points to two alleged errors. The first is that he pleaded guilty to conspiracy to distribute and to possess with the intent to distribute "the Schedule II controlled substance fentanyl." Stuart-Holt, 15-cr-178-LM, document no. 60 at ¶ 1. Stuart-Holt notes that the laboratory report on the drugs seized from his apartment stated that the drugs were the "narcotic drug fentanyl," doc. no. 4 at 42, rather than the "Schedule II controlled substance fentanyl." Second, Stuart-Holt notes that the plea agreement states that the police seized 182 fingers of heroin, when the substance seized was actually

---

[9] Stuart-Holt challenges the validity of his plea agreement directly, rather than framing it as an ineffective assistance of counsel claim. As mentioned above, the plea agreement contains a waiver of Stuart-Holt's right to bring a § 2255 petition other than in certain limited circumstances, including that his counsel was ineffective. In light of Stuart-Holt's pro se status, the court will address his challenges to the plea agreement in the context of an ineffective assistance of counsel claim.

14

fentanyl.  Stuart-Holt argues that his counsel was ineffective for not realizing these errors.

Stuart-Holt has not shown that his counsel's performance was deficient.  Fentanyl is a Schedule II controlled substance. 21 C.F.R. § 1308.12(c)(9).  The fact that the lab report at one point described the substance as the "narcotic drug fentanyl," rather than specifically identifying it as a Schedule II controlled substance, is irrelevant.  Indeed, the lab report later refers to "the schedule II narcotic drug fentanyl."  Id. at 42, 43.  Therefore, his counsel was not ineffective for failing to raise Stuart-Holt's first argument.[10]

With regard to Stuart-Holt's second challenge, the plea agreement states, in relevant part:

> Based on these observations, officers secured the residence and applied for a search warrant.  On June 23, 2015 Manchester District Court Judge William Lyons signed the warrant and law enforcement executed a search of Hardy's residence.  In total, officers seized 182 fingers of heroin and approximately

---

[10] Stuart-Holt also appears to argue that his counsel was ineffective for failing to realize that the lab report showed that the substance tested was acetyl fentanyl, which the lab report notes was not itself a controlled substance at the time of the testing.  But Stuart-Holt misinterprets the report. Although the analysis showed the presence of acetyl fentanyl, as discussed, it also showed the presence of the narcotic drug fentanyl. Regardless, as stated in the lab report, the chemical structure of acetyl fentanyl is "substantially similar to the schedule II narcotic drug fentanyl," doc. no. 4 at 42, and thus could be deemed a controlled substance analogue, 21 U.S.C. § 802(32)(A).

15

> $198,542 in cash from the apartment. The suspected drugs were field tested and the test indicated a presumptive positive result for heroin. Lab testing ultimately identified the substance as fentanyl with a total weight of 1,783.69 grams.

Stuart-Holt, 15-cr-178-LM, document no. 60 at 4-5. Stuart-Holt faults his attorney for not pointing out that the officers actually seized 182 fingers of fentanyl, not heroin as the plea agreement states.

Stuart-Holt's second challenge is without merit. The plea agreement states that the fingers tested presumptively positive for heroin but that lab testing ultimately identified them as fentanyl. Therefore, Stuart-Holt's counsel did not provide ineffective assistance by failing to clarify that sentence in the plea agreement.

V. Sentence

Stuart-Holt faults his attorney for failing to object to the court's sentence on the ground that the court improperly found a base level offense of 37 under the sentencing guidelines. According to Stuart-Holt, that offense level was based on a miscalculation of the amount of money and drugs attributed to him.[11]

---

[11] Stuart-Holt raises a direct challenge to his sentence. As discussed above, Stuart-Holt waived his right to bring such a challenge and, in any event, such a claim is generally not

16

Stuart-Holt has not shown that his counsel was deficient in failing to challenge the offense level. Although Stuart-Holt comes up with his own calculation as to the appropriate amount of money and drugs that should have been attributed to him, that calculation is simply unsupported by the record evidence. Therefore, his counsel's failure to object on that basis was not unreasonable.[12]

**CONCLUSION**

For the foregoing reasons, Stuart-Holt's motion to join petitions (doc. no. 10) is denied to the extent it seeks to join his petition with Hardy's, but granted to the extent it seeks to

---

cognizable in the § 2255 context. See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002). Even if Stuart-Holt could assert such a claim in this context, the claim is procedurally defaulted because Stuart-Holt did not raise it on direct appeal. See Oakes v. United States, 400 F.3d 92, 95 (1st Cir. 2005). As with Stuart-Holt's challenge to his plea agreement, however, in light of his pro se status, the court will address his challenges to his sentence in the context of an ineffective assistance of counsel claim.

[12] Stuart-Holt also asserts that he was not given a copy of the Presentence Investigation Report. At the sentencing hearing, Stuart-Holt's counsel stated that he reviewed the report with Stuart-Holt in advance of the hearing, and relayed to the court Stuart-Holt's request to have a copy of the report. The government represented that the report was accessible and available at the prison where Stuart-Holt was being held, but that the prison did not allow inmates to retain copies of the report. Stuart-Holt stated that he understood. To the extent Stuart-Holt attributes some error to his counsel with regard to the report, that claim is unavailing.

17

adopt Hardy's arguments and law cited in her § 2255 petition and subsequent filings. His motion for relief under 28 U.S.C. § 2255 (doc. no. 4) is denied. Because Stuart-Holt has not made a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules Governing Section 2255 Proceedings. The clerk of court shall enter judgment accordingly and close the case.

    SO ORDERED.

                                            _____
                                            Landya B. McCafferty
                                            United States District Judge

November 8, 2018

cc:  Zakee Stuart-Holt, pro se
     Seth R. Aframe, Esq.